NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KAY KNOBLAUCH, | : | |
| | : | |
| Plaintiff, | : | Civil No. 06-1056 (AET) |
| | : | |
| v. | : | **MEMORANDUM AND ORDER** |
| | : | |
| NEW JERSEY DEPARTMENT OF | : | |
| HEALTH AND SENIOR SERVICES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

THOMPSON, U.S.D.J.

### INTRODUCTION

This matter comes before the Court on behalf of Defendant New Jersey Department of

Health and Senior Services' ("DHSS") Motion for Summary Judgment [17].  The Court has

decided this motion based upon the submissions of the parties, without oral argument, pursuant

to Fed. R. Civ. P. 78.  For the reasons stated below, Defendant's motion is denied.

### BACKGROUND

On March 8, 2006, Plaintiff Kay Knoblauch filed a Complaint, claiming that the New

Jersey Department of Health and Senior Services denied her a promotion to the position of State

Registrar, in violation of the Civil Rights Act of 1964, ("Title VII") 42 U.S.C. § 2000e-2(a)(1) et

seq.  Specifically, Plaintiff claims that the DHSS's decision not to promote her, but rather to

promote Joseph Komosinski, was based on gender discrimination.

Up until mid-2002, the title that was responsible for the Bureau was the Chief of Vital

Statistics, who was also the State Registrar. (Hendricks Cert., ¶¶ 2-5.) The Bureau of Vital Statistics ("Bureau") is an internal division within the DHSS, whose function is to record and maintain all birth, death, and marriage records within the State of New Jersey, and to provide those records to members of the public and other governmental agencies that require the information. (Hendricks Cert., ¶ 1.) From 1997 through mid-2002, the Chief of Vital Statistics and State Registrar was Donald Lipira. (Houston Dep. at 88.) In this capacity, Mr. Lipira reported to James Houston, the Assistant Commissioner for the DHSS. (Id. at 31.)

On or before June 2002, Mr. Lipira announced his anticipated retirement from the position of State Registrar for the Bureau. On June 12, 2002, DHSS posted a vacancy announcement for the State Registrar position. (Smith Decl. Ex. 1.) The posting was for the civil service title of "Chief of Vital Statistics and Registration," then held by Mr. Lipira. (Id.) However, the position was provisional, rather than a permanent position. Mr. Houston was responsible for filling this position.

At the time of the promotional decisions that are subject of this litigation, Plaintiff was employed within the Bureau as an Administrative Analyst. (Knoblauch Dep. at 143.) Mr. Komosinski, was also an Administrative Analyst within the Bureau during this time. (Komosinski Dep. at 80.)

After receiving applications from six employees, including Mr. Komosinski, Mr. Houston appointed Mr. Komosinski to the position of State Registrar. (Komosinski Dep. at 96.) Plaintiff did not apply for this non-permanent position. However, rather than appointing Mr. Komosinski to the position of Chief of Vital Statistics and Registration, State Registrar, Mr. Houston appointed him to a pre-existing, open civil service title, Supervising Administrative Analyst.

2

(Smith Decl. ¶ 8.)  Mr. Komosinksi's position as Supervising Administrative Analyst was also on a provisional, non-permanent basis.

On February 1, 2003, the permanent position of Supervising Administrative Analyst was posted to invite applicants to apply.  Seven employees were eligible to apply for the posting, including both Plaintiff and Mr. Komosinski.  Of the seven employees, five filed applications and were invited to sit for an examination.  (Smith Decl. ¶ 12.)  Following the examination, Mr. Komosinski was appointed to the permanent position of Supervising Administrative Analyst over the other candidates, including Plaintiff.

APPLICABLE LAW

A.    Standard for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.  56 (c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996).

In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the nonmoving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986);  Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to

3

return a verdict in its favor).

In deciding whether triable issues of fact exist, Rule 56(e) of the Federal Rules of Civil

Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in
> this rule, an adverse party may not rest upon the mere allegations or denials of
> the adverse party's pleading, but the adverse party's response, by affidavits or
> as otherwise provided in this rule, must set forth specific facts showing that
> there is a genuine issue for trial.  If the adverse party does not so respond,
> summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  The rule does not increase or decrease a party's ultimate burden of proof

on a claim.  Rather, "the determination of whether a given factual dispute requires submission to

a jury must be guided by the substantive evidentiary standards that apply to the case." Anderson,

477 U.S. at 255.

The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324;  see also Lujan v.

National Wildlife Fed., 497 U.S. 871, 888 (1990) ("[T]he object of [Rule 56(e) ] is not to replace

conclusory allegations of the complaint . . . with conclusory allegations of an affidavit");

Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363

(3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [nonmoving party] need not

match, item for item, each piece of evidence proffered by the movant," but rather must exceed

the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993).

B.      Legal Standard Governing Gender Discrimination Cases

In order to sustain a claim for gender discrimination under Title VII, Plaintiff must prove

4

that she suffered a discriminatory adverse employment action.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252 (1981).  Plaintiff must establish that gender "actually played a role in [the adverse employment decision making] process and had a determinative influence on the outcome."  Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993).

To prevail on a claim for gender discrimination, Plaintiff must satisfy the three-step burden shifting inquiry articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  First, plaintiff has the initial burden of establishing a *prima facie* case of discrimination by showing that: (1) she is a member of a protected class, (2) she was qualified for the position, (3) and she suffered an adverse employment action.  Id.  If Plaintiff succeeds in making out a *prima facie* case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's' rejection."  Burdine, 450 U.S. at 225; McDonnell Douglas, 411 U.S. at 802.  Once the defendant has articulated a justification for the adverse action, the plaintiff must then prove that the "legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).  In order to establish pretext, the plaintiff need only present evidence which would allow a jury to reasonably "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of the employer's action."  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).  A plaintiff need only raise a genuine issue of fact with regard to the employer's actual motive.  Farrell v. Planter Lifesavers Co., 206 F.3d 271, 283 (3d Cir. 2000).  A plaintiff can raise a genuine issue of fact by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered

5

legitimate reasons for its action that a "reasonable fact-finder could rationally find them unworthy of credence."  Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997); see also, Fuentes, 32 F.3d at 764.

<u>DISCUSSION</u>

Defendant argues that summary judgment should be granted with respect to Plaintiff's claims that she suffered discrimination because of her gender.  In support, Defendant submits that Plaintiff cannot establish a *prima facie* case of gender discrimination because she never applied for the position of which she complains.  However, Plaintiff maintains that her claim is based not on the Chief of Vital Statistics posting in June 2002, but on the denial of the Supervising Administrative Analyst position posted in February 2003 for which Plaintiff applied.

Further, Defendant argues that Plaintiff cannot establish a *prima facie* case of gender discrimination because she cannot establish that the promotion of Mr. Komosinski to Supervising Administrative Analyst occurred under circumstances giving rise to discrimination.  Defendant states that is was "authorized" to permanently place Mr. Komosinski in the position, after having provisionally appointed him, because of his job performance, and because he scored sufficiently well on the exam.  However, this does not change the essential fact that Mr. Komosinksi was chosen over Plaintiff for the position, one of the requirements for establishing a *prima facie* case. The mere fact that Mr. Houston could, or had the right to place Mr. Komosinksi into the permanent posting in February 2003, does not mean that his decision to do so over Plaintiff was not based on a discriminatory motive.  The decision to place Mr. Komosinski in the permanent position, over Plaintiff, goes to the issue germane to this motion, that is, whether the appointment of Mr. Komosinski to the permanent position was discriminatory.

Additionally, Defendant claims that because it was authorized to place Mr. Komosinski in the position and that he was qualified, it has articulated legitimate, non-discriminatory reasons for its decision to promote Mr. Komosinski.  However, the qualifications of both Mr. Komosinski, and Plaintiff, are debated by counsel for both parties.  Despite claims by Defendant that Mr. Houston chose Mr. Komosinksi over Plaintiff because he was more qualified, the record does not compel such a conclusion.  Mr. Houston's testimony infers that he had no knowledge of Plaintiff's qualifications.  (Houston Dep. at 110-114.)  Therefore, the qualifications of Mr. Komosinski, and further, the qualifications of Plaintiff, are genuine issues of material fact as yet unresolved.

The Court finds that there are genuine issues of material fact that would preclude the granting of summary judgment in Defendant's favor at this time.

<u>CONCLUSION</u>

For the reasons given above, and for good cause shown,

It is on this 9th day of January 2008,

ORDERED that Defendant's Motion for Summary Judgment [17] is DENIED at this juncture.

 

 

 

 

       s/ Anne E. Thompson
_____
ANNE E. THOMPSON, U.S.D.J.

7